HAWKEYE BANK, Administrator of
the Estate of Jessica Smith,
Deceased, Appellee,

v.

STATE of Iowa, Appellant.

No. 92–1267.

Supreme Court of Iowa.

April 20, 1994.

Rehearing Denied May 25, 1994.

Bonnie J. Campbell, Atty. Gen., and Joanne Moeller, Asst. Atty. Gen., for appellant.

Dean T. Jennings of McGinn, McGinn & Jennings, Council Bluffs, and Troyce A. Wheeler, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

The State appeals from an adverse judgment in a tort claim action brought by the personal representative of Jessica Smith, a child who died in a playground accident at the Iowa School for the Deaf on March 1, 1989. The State contends that the district court erred in submitting the case to the jury on a theory of *res ipsa loquitur* and further erred in submitting certain specific grounds of negligence. Because we agree with both of these contentions, we reverse the judgment of the district court and remand the case for a new trial on all issues.

Jessica Smith, age six, attended school at the Iowa School for the Deaf (ISD) in Council Bluffs, Iowa. She was in the first grade. On March 1, 1989, Jessica went outside for recess with her first grade class at 10:05 a.m. Although she was in a class of six, there were approximately twenty-five children from different classes being supervised by two teachers during recess. The teachers did not count the children before or after recess. Jessica was last seen by one of the teachers at approximately 10:15 a.m. Recess ended at 10:20 a.m., and the children were signaled to come in at that time.

Upon returning to the classroom, Jessica's teacher noticed that Jessica was not with the group. After searching for the child in the building and in the gymnasium located in a separate building, one of the teachers decided to look out on the playground. Jessica was found hanging by her scarf from the railing of the spiral slide on the playground. Attempts were made to resuscitate Jessica, and emergency help was called for at 10:56 a.m. Jessica was pronounced dead due to asphyxiation at Jennie Edmundson Hospital. The medical examiner fixed the time of Jessica's death at approximately 10:45 a.m.

A tort claim was filed with the State Appeal Board on August 22, 1989, by "Estate of Jessica L. Smith." The basis for this claim was listed as negligent supervision, faulty equipment, negligence in maintaining equipment, and failure to warn of possible danger. The amount of the claim was listed as "undetermined at this time." In a letter dated June 8, 1990, the Smith attorneys notified the State that "[d]emand is hereby made for $400,000 to fully and finally settle all of the claims which this estate has against the State of Iowa...." This claim was denied in a letter dated June 13, 1990.

On January 28, 1991, plaintiff "Estate of Jessica Smith, deceased" filed its original petition with the district court. An amended petition was filed on March 5, 1991, which substituted "First National Bank of Council Bluffs, Administrator of the Estate of Jessica Smith, deceased" as plaintiff. The trial began on June 9, 1992. The issue of the State's liability was submitted to the jury on a theory of *res ipsa loquitur* and also on specific grounds of negligence that included the failure to properly supervise Jessica on the playground on the morning of her death, failure to promptly respond to her noted absence after the class returned from the playground, failure to instruct her concerning the proper use of the equipment, and failure to provide safe playground equipment for children on

the playground. On June 17, 1992, the jury returned a verdict in favor of the plaintiff and assessed damages in the amount of $480,000. Other facts that bear on the issues in controversy will be considered in connection with our discussion of the legal issues that have been presented.

## I. Alleged Statutory Defenses to the Claim.

The State asserts three statutory defenses to plaintiff's claim that we must consider before examining the issues involving alleged procedural errors at trial.

■ A. *Legal sufficiency of the State Appeal Board claim.* The State contends that the plaintiff failed to state a dollar amount in its demand filed with the State Appeal Board. That circumstance, the State asserts, renders the statement of claim invalid. It argues that this results in a situation in which no valid claim was filed within the time required by Iowa Code section 25A.13 (1989). We disagree.

Although we have never declared that a specific dollar amount is essential in order for a valid claim to be considered by the State Appeal Board, we will assume that this is the case. We agree, however, with the conclusion of the United States Court of Appeals under the federal tort claims act that "no particular form or manner of giving such notice is required as long as the agency is somehow informed of the fact of and amount of the claim within the ... period prescribed." *Williams v. United States,* 693 F.2d 555, 557 (5th Cir.1982).

In the present case, the appeal board consented to consider the claim beyond the six-month period in which the plaintiff might have commenced its action. Within the period of the general statute of limitations and during the time the claim was being considered by the board, plaintiff submitted a demand for a specific dollar amount. Although that demand was presented to an assistant attorney general rather than directly to the board, the assistant attorney general was, at the time, actively representing the board with respect to plaintiff's claim. We conclude that there was no deficiency in the notice of claim to the State Appeal Board.

■ B. *Failure to designate the proper party plaintiff within the period of limitations.* The State also asserts that the petition failed to correctly designate the plaintiff entitled to sue within the period of the statute of limitations contained in section 25A.13. As we have previously noted, the action was originally commenced in the name of "Estate of Jessica L. Smith." Later, and more than two years from the date of Jessica's fatal accident, the petition was amended to name Jessica's personal representative as the plaintiff.

Section 25A.6 provides that suits under chapter 25A "shall be in accordance with the rules of civil procedure." It is provided in the rules of civil procedure that:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Iowa R.Civ.P. 89. This rule has most recently been interpreted in *Porter v. Good Eavespouting,* 505 N.W.2d 178, 181 (Iowa 1993), and *Grant v. Cedar Falls Oil Co.,* 480 N.W.2d 863, 866 (Iowa 1992).

The portion of this rule that pertains to changing parties or names of parties, as interpreted in *Porter* and *Grant,* only speaks to identity of defendants. We believe, however, that similar principles should govern relation back of an amendment changing the plaintiff or correcting the name of the plaintiff. Clearly, in the present case, the initial notice of suit in the name of "Estate of Jessica L. Smith" adequately conveyed to the State the nature of the claim being made. It

further imparted information from which the State knew or should have known that, but for a mistake in naming the proper party, the action would have been brought against it. Consequently, we conclude that the amendment changing the name of the plaintiff relates back to the filing of the initial complaint.

■■■ C. *The discretionary-function defense.* The State also argues that it has a valid defense to plaintiff's claim based on the discretionary-function exemption contained in Iowa Code section 25A.14(1). Again, we disagree with the State's contention. The so-called discretionary-function exception does not extend to all governmental activities involving an element of choice. In order for the State to be immunized from liability, the choice must represent a policy judgment of superior authority that a particular task be done in accordance with the prescribed policy. *See Stanley v. State,* 197 N.W.2d 599, 603–04 (Iowa 1972).

Plaintiff's most prominent claims of negligence are based on a failure of playground supervision and a failure to track a missing student upon return to the classroom following recess. There is nothing to indicate that the State had adopted any formal policies with respect to either of these situations. It entrusted the supervising teachers at the Iowa School for the Deaf to exercise such care as was necessary for the particular situation. The alleged lack of supervision of and accounting for the deceased minor child may not be established as conforming with a policy determination of superior authority. The district court correctly rejected the State's theory of defense based on the discretionary-function exception to liability.

■■■ Before leaving our discussion of the discretionary-function defense, we wish to reexamine our prior conclusion expressed in *Hyde v. Buckalew,* 393 N.W.2d 800, 802 (Iowa 1986), and prior cases cited therein, that the defenses contained in section 25A.14 are jurisdictional in nature. That conclusion was initially arrived at because of the fact that these defenses are stated as exceptions to a claimant's ability to sue the state on the types of claims enumerated under section 25A.14. Upon further consideration, we conclude that the latter circumstance does not render the defenses in question jurisdictional.

The existence of sovereign immunity, in whole or in part, is just as easily characterized as a defense on the merits to a claim against the State. The advantages to that characterization are many. It more readily facilitates the joining of several defenses, some of which have previously been considered to be jurisdictional and some of which clearly are not in a single procedural motion. More significant, we believe, is the fact that viewing these matters as defenses on the merits will require them to be presented at the same time as other defenses in the litigation. This will preclude the undesirable potential that such defenses may be presented for the first time on appeal or in a subsequent proceeding.

We recently declared that analogous defenses to tort claims against political subdivisions will be considered as defenses on the merits rather than jurisdictional. *See Moyer v. City of Des Moines,* 505 N.W.2d 191, 193 (Iowa 1993). We now hold that the same is true of the defenses enumerated in section 25A.14. We disavow any suggestions to the contrary in our prior cases.

II. *Submission of the Res Ipsa Loquitur Theory.*

■■■ The State contends that the district court erred in submitting the case to the jury under a theory of *res ipsa loquitur* in addition to those claims of specific negligence that were submitted. It contends that plaintiff's case fails to meet the two foundational elements required for submission of *res ipsa loquitur.* These are: (1) that the defendant had exclusive control of the instrumentality involved in the injury, and (2) that the accident was of a nature that it would not have occurred in the ordinary course of things had ordinary care been employed. *See Sammons v. Smith,* 353 N.W.2d 380, 385 (Iowa 1984).

The plaintiff argues that several of the instrumentalities that combined to produce Jessica's death were under the exclusive control of state employees at the Iowa School for the Deaf. We will assume that to have been the case as we seek to discover the presence

of the second foundational element. In the somewhat analogous cases of *Mastland, Inc. v. Evans Furniture, Inc.*, 498 N.W.2d 682, 686 (Iowa 1993); *Wong v. Waterloo Community School District*, 232 N.W.2d 865, 870–71 (Iowa 1975); and *Fosselman v. Waterloo Community School District*, 229 N.W.2d 280, 283 (Iowa 1975), we have recognized that the potential for young children to act out in unpredictable and freakish ways precludes any presumption of negligence by supervising authorities when this occurs. We continue to adhere to that view.

Although there is circumstantial evidence from which negligence might be found in the present case, the foundation for the application of the *res ipsa loquitur* doctrine must be established without regard to any specific act of negligence. Focusing on the control that the State exercised over the playground, the child, or both, we are unable to agree that the accident was of a nature that it would not have occurred in the ordinary course of things had ordinary care been employed. The district court erred in submitting the case to the jury under a theory of *res ipsa loquitur*.

III. *Submission of Improper Specifications of Negligence.*

In addition to the challenge lodged to the submission of *res ipsa loquitur*, the State contends that certain specific acts of negligence that were instructed upon lacked evidentiary support. We have recognized that the purpose of requiring a jury to consider specifications of negligence is to limit the determination of the factual questions arising in negligence claims to only those acts or omissions that the jury might reasonably find from the evidence. *Rinkleff v. Knox*, 375 N.W.2d 262, 266 (Iowa 1985). Although the State challenges nearly all of the specifications of negligence submitted in the present case, we find deficiencies in only two. These are the specifications relating to the alleged failure to provide safe playground equipment and the alleged failure to instruct Jessica concerning the proper use of that equipment.

■ There was no evidence of any defect in the design of the spiral slide in question that would have caused Jessica to fall therefrom. Plaintiff's theory as to how the slide

was defective concerns the existence of a protrusion or notch on which Jessica's scarf became entangled. An expert witness testified that playground equipment should be designed in a manner that minimizes the opportunity for entanglement of clothing. Although we agree that that is a desirable goal, the extent to which this may have been done in a manner practicable under the circumstances has not been demonstrated.

We believe that proof of an alternative safer design that is practicable under the circumstances is required in order to generate a jury question on this issue. *See Hillrichs v. Avco Corp.*, 478 N.W.2d 70, 75 (Iowa 1991). Because negligence is behavior that poses an unreasonable danger to others, *see Rinkleff*, 375 N.W.2d at 265; *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 913 (Iowa 1975), some objective basis must be present in the record for finding the risk to be unreasonable. We conclude that the evidence in the present case fails to generate a jury question based on a dangerous condition of the slide. The jury should not have been allowed to consider that issue.

■ The State also challenges the trial court's instruction permitting the jury to find the State negligent for failure to instruct Jessica concerning the proper use of the slide. We conclude that this instruction also lacks support in the evidence. To permit a finding of negligence on this theory it must appear that special instruction was needed in order to avoid some hazard specifically attributable to the piece of playground equipment involved in the injury. There is no indication that Jessica's tragic death occurred from any hazard inhering in the slide. It most likely occurred from carelessness in positioning her body on the slide. The type of instruction or admonition that would be relevant to that type of conduct involves advice to be careful and not take chances. A failure to give that type of general admonition does not, in our view, give rise to a fact issue concerning the State's actions in instructing on the proper use of the equipment.

IV. *Disposition.*

Our finding that the district court erred in instructing on the doctrine of *res ipsa loqui-*

*tur* and with respect to two specific claims of negligence submitted to the jury requires the grant of a new trial. We conclude that the new trial should be on all issues. As we observed in *Larimer v. Platte,* 243 Iowa 1167, 1176, 53 N.W.2d 262, 267 (1952), it is the general rule that when error is found on appeal a judgment at law will not be affirmed in part and reversed in part, but a new trial will be ordered as to all issues, particularly when there is a single judgment. The judgment of the district court is reversed. The case is remanded to that court for a retrial of all issues.

**REVERSED AND REMANDED.**